# Sotack v. Gnaden Huetten Memorial Hospital

C.P. of Monroe County, no. 2842 Civil 1994.

*C. Stuart Magargee,* for plaintiff.
*Edward C. McCardle, Shawn P. Phillips, Glenn Guanowsky* and *Susan Ellis Wild,* for defendants.

O'BRIEN, *J.,* February 10, 1997—The plaintiff, Danica L. Sotack, individually and as administratrix of the estate of Jess U. Sotack, deceased, instituted this action against defendants, Gnaden Huetten Memorial Hospital, Athanasiou Houides M.D. and Peter Tey M.D., by complaint filed November 2, 1994 seeking damages predicated on alleged medical negligence of the defendants in diagnosing and treating the decedent. Timely answers were filed by all defendants, and depositions have been taken of both individual defendants and the chief executive of the defendant hospital. Although extensive discovery has been accomplished by the parties and their counsel, presently before the court is a discovery dispute affecting both the defendant hospital and another health care facility which is not a party to this proceeding.

On August 14, 1996, plaintiff forwarded a subpoena by a records copy service to Lehigh Valley Hospital seeking any and all documents relating to the employment and/or granting of staff privileges to defendant Houides. Plaintiff served LVH because Dr. Houides testified in his deposition on July 26, 1995 that he was previously on the active staff of and had admitting privileges at what is now LVH. In response to the subpoena, by correspondence dated August 26, 1996, LVH, through its director of claims/risk management and staff attorney, informed the records copy service that Dr. Houides was not an employee of LVH and, further,

any information or documents concerning his credentials and/or staff privileges as an independent practitioner on the medical staff of LVH are confidential and protected from discovery pursuant to the Pennsylvania Peer Review Protection Act, 63 P.S. §425.1 et seq. On October 31, 1996, plaintiff filed a motion to compel compliance with the subpoena directed to LVH, and LVH filed a response asserting the protections of the Peer Review Protection Act.

The Pennsylvania Peer Review Protection Act provides in pertinent part as follows:

"Section 425.4. Confidentiality of review organization's records

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting at such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such committee or opinions formed by him as a result of said committee hearings."

The Superior Court has held that through the foregoing confidentiality provision, "the legislature has sought to foster free and frank discussion by review organizations." *Sanderson v. Frank S. Bryan M.D. Ltd.,* 361 Pa. Super. 491, 496, 522 A.2d 1138, 1140 (1987), *appeal denied,* 517 Pa. 624, 538 A.2d 877 (1987), quoting *Steel v. Weisberg,* 347 Pa. Super. 106, 110, 500 A.2d 428, 430 (1985). It is noted that a litigant may not withhold material otherwise discoverable from an original source simply because that material was presented during peer review proceedings. *Walmsley v. Pennsylvania Hospital,* 32 Phila. 573 (1996).

Plaintiff's motion to compel compliance with the subpoena directed to LVH concerns discovery of the following from non-party LVH regarding Dr. Houides: pre-employment investigations, credential committee records, performance evaluations, appraisals and recommendations, staff privileges, credentials and applications for appointment and reappointment, documents referring or relating to disciplinary action or termination and documents referring or relating in any manner to the employment of Dr. Houides. The instant action is not against LVH, rather, it is against GHMH, Dr. Houides and Dr. Tey. Additionally, plaintiff states in her brief, "this case is not an action against Lehigh Valley for *any of its conduct,*" rather, . . . "the competency, or incompetency, of Dr. Houides, a member of the hospital's [GHMH] medical staff now and at the time Ms. Sotack's decedent, Jess Sotack, was a patient at the hospital [GHMH], is clearly the issue in this case." (Plaintiff's brief at 6.) Plaintiff contends, however, that the credential records and employment history of Dr. Houides while on staff or while he had privileges at LVH is relevant to the knowledge of GHMH about the competency and skill of Dr. Houides.

Plaintiff primarily relies upon *Thompson v. Nason Hospital,* 370 Pa. Super. 115, 535 A.2d 1177 (1988), *affirmed,* 527 Pa. 330, 591 A.2d 703 (1991) for support for her contention that the requested documents are discoverable from LVH. However, plaintiff's reliance on *Thompson* is misplaced. The *Thompson* decision merely takes cognizance of the existence of a cause of action for hospital corporate negligence and establishes the applicable standard of care. *Thompson* is inapplicable in the instant case with respect to LVH because the plaintiff is not asserting a claim against LVH for corporate negligence or for any other theory of liability. The documents sought by the plaintiff from LVH are inapposite to the plaintiff's cause of action against GHMH, Dr. Houides and Dr. Tey. We, therefore, deny the plaintiff's motion to compel compliance with the subpoena dated August 1996.

The discovery dispute involving the hospital named as a defendant in this proceeding is couched in the form of plaintiff's motion to strike the hospital's objections to plaintiff's second request for production of documents. The documents at issue fall within the following four categories: "(1) policy and procedural manuals governing the medical and nursing staffs at the GHMH;

"(2) documents relating to the applications of Doctors Tey and Houides for privileges at GHMH;

"(3) records kept by GHMH regarding or referring to Doctors Tey and Houides, and any clinical and competency reviews pertaining to them; and

"(4) records regarding the nature of the privileges granted to Doctors Tey and Houides and any changes in the scope of the doctors' privileges."

GHMH asserts that discovery of the information sought by the plaintiff is prohibited pursuant to the

PPRPA. The Superior Court in *Sanderson v. Bryan, supra,* held that the protection of the Act extends to Peer Review Committee reports, records, proceedings, testimony and materials concerning the treatment of persons other than the plaintiff. The *Sanderson* court upheld a broad interpretation of the privilege conveyed by the Act, holding that a medical malpractice plaintiff is not entitled to discover hospital peer review matters which were not directly related to or reasonably associated with plaintiff's cause of action, including complaints against the defendant doctor by other patients. *Id.* The *Sanderson* court further stated that the Peer Review Committee's purpose under the definition of a review organization is to evaluate and to improve the quality of health care, to reduce morbidity and mortality, and to establish and enforce guidelines to maintain reasonable health care costs.

Applying the foregoing standard to the documents falling within categories (3) and (4), as enumerated above, make it apparent that these records are protected by the Peer Review Protection Act. On the other hand, policy and procedural manuals governing the medical and nursing staffs at the defendant hospital should be made available for inspection and/or copying at the expense of plaintiff's counsel. This leaves as the critical issue to be resolved the "documents relating to the application of Drs. Tey and Houides and privileges at GHMH."

While it is true that the broad interpretation of the Peer Review Protection Act set forth in *Sanderson v. Bryan, supra,* would appear to preclude the disclosure of this information, the Superior Court's interpretation of that Act preceded the decision of our Supreme Court in *Thompson v. Nason Hospital, supra,* which recognized the existence of a cause of action for hospital

corporate negligence. Plaintiff's complaint alleges, inter alia, that the defendant hospital "failed to select and retain only competent physicians." This allegation would logically be established or defended in part based upon the information the defendant hospital had available to it before granting staff privileges to the defendant doctors in this proceeding. Therefore, we conclude that this information should be made available in discovery as it certainly may become a factual issue at trial.

In *Fowler v. Pirris,* 34 D.&C.3d 530 (1981), the Washington County Court of Common Pleas found that an application for staff privileges of a defendant doctor in a malpractice action was not protected under the PPRPA, as it was not a document that reviews the services of another health care provider. An application for staff privileges, strictly speaking, is "a recital in the applicant's own words of what qualifications he believes he has that would entitle him to a staff position." *Id.* at 535.

The *Fowler* court similarly held that documents reflecting the defendant hospital's investigation of the defendant doctors' qualifications and documents of the staff privileges of the defendant doctors were unprotected by the PPRPA. The *Fowler* court reasoned that in order for the plaintiff to prove his case that the hospital was negligent in permitting unqualified medical practitioners to render treatment, it is necessary for the plaintiff to show how the review of staff applications was negligent. This can only be done when the standards that were applied and documents showing the manner of their application are furnished to him. *Id.* The court in *Fowler* stated that "the PPRPA . . . was not meant to insulate a hospital group from liability if that group in their negligent review of staff applications permitted one not fully qualified to administer expert medical

services." *Id.* at 537. Indeed, the information supplied by the defendant doctors when they applied for privileges and the procedures followed by the hospital in evaluating those applications would also be important to the defendant hospital's defense of the allegations of corporate negligence. Therefore, we conclude the documents falling within category (2) enumerated above should be provided.

### ORDER

And now, February 10, 1997, upon consideration of the attached motions, it is ordered as follows:

(1) Plaintiff's motion to compel compliance with the subpoena directed to Lehigh Valley Hospital is denied.

(2) Plaintiff's motion to strike the objections of Gnaden Huetten Memorial Hospital to her second request for production of documents as well as interrogatory no. 5 of her second set of interrogatories are denied except that Gnaden Huetten Memorial Hospital is ordered to produce to plaintiff documents relating to the applications of Doctors Tey and Houides for privileges at Gnaden Huetten Memorial Hospital.